IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| ROBERT T. ADAMS, | ) | |
| | ) | CASE NO. BK10-81989-TLS |
| Debtor(s). | ) | A10-8060-TLS |
| KIMBERLY SUE TYREY, | ) | |
| | ) | |
| Plaintiff, | ) | CHAPTER 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT T. ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This matter is before the court on the plaintiff's motion for summary judgment (Fil. No. 18). No resistance was filed. James W. Crampton represents the debtor, and Russell Westerhold represents the plaintiff. Evidence and a brief were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted.

The parties to this matter were romantic partners, and the debtor and his daughter lived with Ms. Tyrey, the plaintiff. Ms. Tyrey maintained a checking account with Wells Fargo Bank and added the debtor to the account when Wells Fargo informed her the debtor could not otherwise deposit his paycheck into the account. The parties paid joint household expenses from that account. Thereafter, the debtor lost his job and made fewer contributions to the Wells Fargo account or to the household expenses. The parties ended their relationship and the debtor moved out of Ms. Tyrey's home in June 2009. He withdrew $7,000 from the Wells Fargo account at that time, without the knowledge or permission of Ms. Tyrey. Because the account balance at the time of the withdrawal was approximately $300, the bulk of the withdrawal came from a line of credit on which Ms. Tyrey is solely liable. Ms. Tyrey sued the debtor in Douglas County Court and, after trial, obtained a judgment for the $7,000 withdrawal, plus $993.90 in interest, plus interest at the rate of 19.99% until the judgment is paid in full. A few months later, the debtor filed the underlying Chapter 7 case. Ms. Tyrey now seeks a determination that the debt is non-dischargeable under 11 U.S.C. §§ 523(a)(4) and/or (a)(6).

The Bankruptcy Code excepts from discharge under 11 U.S.C. § 727 any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.[]" § 523(a)(4). Fraud by

a fiduciary is not at issue here. Embezzlement is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come. *Belfry v. Cardozo (In re Belfry)*, 862 F.2d 661, 662 (8th Cir. 1988). The plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used. *Id.* To show embezzlement, the creditor has to prove that it entrusted its property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud. *Bankers Trust Co. v. Hoover (In re Hoover)*, 301 B.R. 38, 52 (Bankr. S.D. Iowa 2003). Implicit in a claim of embezzlement is a degree of fraudulent intent. *Chapman v. Fuget (In re Fuget)*, 339 B.R. 702, 707 (Bankr. S.D. Iowa 2006).

Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without consent of the owner. *Rech v. Burgess (In re Burgess)*, 106 B.R. 612, 622 (Bankr. D. Neb. 1989). "The essential difference between larceny and embezzlement is the manner in which property comes into the possession of the person charged. Embezzlement involves a lawful or authorized possession. In the case of larceny, however, the original taking and possession is unlawful." *Id.*

Likewise, a debt may be excepted from the discharge of debts granted under § 727 if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6). To except a debt from discharge under that section, a plaintiff must establish, by a preponderance of the evidence, that the debt arises from an injury that is both willful and malicious. *Sells v. Porter (In re Porter)*, 539 F.3d 889, 893 (8th Cir. 2008). In this context, the term "willful" means that the injury, not merely the act leading to the injury, must be deliberate or intentional. If the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences. *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008). A "malicious" injury is one that is targeted at the creditor, in the sense that the conduct is certain or almost certain to cause harm. *Jamrose v. D'Amato (In re D'Amato)*, 341 B.R. 1, 4-5 (B.A.P. 8th Cir. 2006). The category of injury envisioned by the Supreme Court is that of an intentional tort. *Osborne v. Stage (In re Stage)*, 321 B.R. 486, 492 (B.A.P. 8th Cir. 2005) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)). In a practical sense,

> if the debtor was aware of the plaintiff-creditor's right under law to be free of the invasive conduct of others (conduct of the sort redressed by the law on the underlying tort) and nonetheless proceeded to act to effect the invasion with particular reference to the plaintiff, willfulness is established. If in so doing the debtor intended to bring about a loss in fact that would be detrimental to the plaintiff, whether specific sort of loss the plaintiff actually suffered or not, malice is established.

*KYMN, Inc. v. Langeslag (In re Langeslag)*, 366 B.R. 51, 59 (Bankr. D. Minn. 2007).

Here, Ms. Tyrey relies on the Douglas Count Court order and judgment to establish the non-dischargeability of the debt. A state court action to establish a debt is separate from a determination of the dischargeability of that debt in bankruptcy. *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 609

(B.A.P. 8th Cir. 1997). The bankruptcy court has exclusive jurisdiction to determine whether debts for a debtor's fiduciary or non-fiduciary fraud, embezzlement, larceny, or willful and malicious injury are non-dischargeable. 11 U.S.C. § 523(c); *Zio Johnos, Inc. v. Ziadeh (In re Ziadeh)*, 276 B.R. 614, 619 (Bankr. N.D. Iowa 2002). Therefore, the court must review the state court judgment to see whether it establishes the elements of a prima facie case under § 523. *Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989-90 (8th Cir. 1999).

When determining whether collateral estoppel arises from a prior state court judgment, federal courts apply the substantive law of the forum state in whose courts the prior judgment was entered. *Osborne*, 321 B.R. at 492. In Nebraska, the doctrine of collateral estoppel, also known as issue preclusion, holds that an issue of ultimate fact that was determined by a valid and final judgment cannot be litigated again between the same parties or their privies in any future lawsuit. *Stevenson v. Wright*, 733 N.W.2d 559, 565-66 (Neb. 2007). Collateral estoppel is applicable where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a judgment on the merits which was final, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.* at 566. The party asserting preclusion bears the burden of proving each of the elements. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir.1991). When making the determination that an issue was actually litigated and was necessary to the decision in the prior proceeding, the court should examine the entire record of the earlier case. *Id.*

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 868 (8th Cir. 2005); *Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 401 (8th Cir. 2004).

To withstand a motion for summary judgment, the non-moving party "has an affirmative burden to designate specific facts creating a triable controversy." *Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (internal citations omitted). Failure to oppose a basis for summary judgment constitutes a waiver of that argument. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734-35 (8th Cir. 2009). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Here, the following facts are agreed to or otherwise uncontroverted:

1. Ms. Tyrey and the debtor formerly lived together and shared a joint Wells Fargo Bank account for part of that time. The debtor's name was added to the account, which was originally Ms. Tyrey's account.

2. Ms. Tyrey and the debtor separated in May 2009.

3. On June 16, 2009, the debtor withdrew $7,000.00 from the Wells Fargo Bank account.

4. The $7,000.00 that the debtor withdrew from the Wells Fargo Bank account was withdrawn neither at Ms. Tyrey's direction nor used for her benefit.

5. There was less than $7,000.00 in the Wells Fargo Bank account on June 16, 2009, when the debtor made his withdrawal. The balance of the withdrawal was charged to a credit card connected to the Wells Fargo Bank account and billed to Ms. Tyrey, with an interest rate of 19.99%.

6. Ms. Tyrey subsequently sued the debtor in the County Court of Douglas County, Nebraska. The county court determined the $7,000.00 withdrawn by the debtor was not money that the debtor had put into the account. The county court further found the debtor spent that money for his own personal use and Ms. Tyrey is now repaying that amount.

7. Ms. Tyrey obtained a judgment of $7,000.00, plus $993.90 in accrued interest, with interest on the unpaid judgment to accrue at a rate of 19.99%.

The evidence indicates the parties each deposited their paychecks into the Wells Fargo checking account and used the funds to pay monthly household expenses. Ms. Tyrey contributed a greater percentage of the deposits than the debtor did. When the parties separated, Ms. Tyrey took steps to close the checking account, although she left approximately $300 in it to cover some scheduled automatic withdrawals. The debtor then visited the bank and wrote and cashed a counter check on the account for $7,000. Because this withdrawal exceeded the balance of the account, the remaining amount was paid from a $7,000 line of credit existing for overdraft protection.

After the county court trial, the judge ruled that the withdrawal from the line of the credit was money obtained from a third party, as neither Ms. Tyrey nor the debtor had contributed those funds to the account. This brings it within the scope of the embezzlement exception to discharge, because while the parties owned the funds in the joint account, albeit only in the proportion of their respective contributions,[1] they did not own the funds in the line of credit and the debtor certainly did not have the authority to withdraw those funds for his own use while expecting Ms. Tyrey to repay the full amount.

The judgment also supports a finding of non-dischargeability under § 523(a)(6) because the debtor's actions were both willful and malicious. The debtor's testimony indicates he was aware at the time he wrote the counter check that the account balance was approximately $300 and the maximum on the line of credit was $7,000. With that knowledge, he intentionally withdrew very nearly the full amount of available funds. The conclusion to be drawn from this evidence is that he

---

[1] Neb. Rev. Stat. § 30-2722(b).

-4-

knew or should have known his action was certain or substantially certain to put Ms. Tyrey in a financial bind. Thus, his conduct was willful. He also testified that he considered the withdrawal to be payment for a car he had arranged to purchase for Ms. Tyrey. The parties testified that the debtor obtained the loan for the vehicle, but Ms. Tyrey made all of the payments, and when they separated she returned the car to him. Therefore, upon cashing the check, he had possession of the vehicle as well as $7,000 in purported payment for the vehicle, in detriment to Ms. Tyrey. This clearly suggests he intended to punish her for ending the relationship by causing her financial harm, which renders his conduct malicious.

The debtor has not demonstrated the existence of any factual dispute, as he did not respond to the motion for summary judgment. Therefore, Ms. Tyrey is entitled to judgment.

IT IS ORDERED: The plaintiff's motion for summary judgment (Fil. No. 18) is granted. Separate judgment will be entered.

DATED:    September 29, 2011

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
   James W. Crampton
   *Russell Westerhold
   U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.